IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| INERSCA LOCKHART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:04cv301 |
| | § | |
| HOME INTERIORS & GIFTS, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

On this day came on for consideration Defendant Home Interiors & Gifts' ("HIG") Motion for Summary Judgment [Doc. No. 12]. Having considered the motion, Plaintiff Inersca Lockhart's ("Lockhart") response, HIG's reply, and Lockhart's supplemental summary judgment evidence, the Court is of the opinion the motion should be granted.

**Background**

HIG employed Lockhart on June 19, 2001 as a shipping clerk. Terri McClendon ("McClendon") is HIG's Human Resources ("HR") manager over distribution employees. Violeta Guzman ("Guzman") is an HR assistant in McClendon's office, and Amber Kramer ("Kramer") worked as a senior HR generalist. Cindy Case ("Case") worked two days in HIG's HR department as a leave administrator. Pursuant to its Employee Handbook, HIG required medical certification for all FMLA leaves. The medical certifications were required to state the necessity for the leave. HIG's Employee Handbook also required documentation for doctor's appointments for which accrued sick leave could be used. Between July 19, 2001 and October 28, 2002, Lockhart presented HIG with "Certificates to Return to Work" or similar doctors' notes

on at least sixteen (16) occasions.

Lockhart's scheduled work week was from Sunday to Thursday. Lockhart called in sick to HIG on Sunday, January 26, 2003, due to problems related to diarrhea and a yeast infection. Dr. Cummings, Lockhart's OB/GYN saw Lockhart on January 27, 2003. Lockhart told Dr. Cummings that she had been diagnosed with irritable bowel syndrome ("IBS"). Lockhart was diagnosed with IBS by Dr. Rulof in 2002. On January 27, 2003, Dr. Cummings provided a medical slip for Lockhart, which required her to stay home from work for 7-10 days because of her IBS. Lockhart never provided this medical slip to HIG.

Lockhart contacted Kramer on January 27, 2003 and told Kramer that her doctor was treating her for IBS and that Lockhart should stay home from work for 7-10 days. Kramer informed Lockhart that in order to receive leave for 7-10 days, Lockhart was required to request medical leave pursuant to HIG's FMLA policy. Kramer informed Lockhart that the FMLA paperwork would be mailed to her and that Lockhart should return the completed paperwork to HIG.

Kramer informed McClendon that Lockhart had called stating she was ill and that Kramer would be mailing the FMLA paperwork to Lockhart. The FMLA paperwork was sent as an enclosure to a letter dated January 29, 2003 from Case. Lockhart stated that she received the letter and the FMLA paperwork on February 5, 2005.

On February 7, 2003, Dr. Cummings saw Lockhart to review the results of an ultrasound and as a follow-up from her prior visit. At this time, Dr. Cummings had not completed a medical certification form. Dr. Cummings testified at his deposition that Dr. Rulof was treating Lockhart for IBS and was overseeing her bowel cleansing. Dr. Cummings was not treating Lockhart for

her IBS condition.

On February 12, 2003, Lockhart completed and signed the Leave of Absence Statement provided to her by HIG. In this Leave of Absence Statement, Lockhart requested medical leave from January 26, 2003 through February 10, 2003. McClendon testified that this Leave of Absence Statement was not received by HIG until after 4:00 p.m. on February 18, 2003, and did not include a medical certification. Lockhart testified that as of February 12, 2003, she had not provided any medical documentation to HIG.

Dr. Cummings testified that Kristina Black, who worked in Dr. Cummings' office, filled out a Certification of Health Care Provider at his request and faxed it to "Terry" on February 14, 2003. Dr. Cummings' office provided a fax confirmation page that indicated the fax was completed; however, McClendon stated that she did not receive the fax from Dr. Cummings. In any event, the form filled out by Kristina Black on behalf of Dr. Cummings states that Lockhart is not incapacitated and not "unable to perform work of any kind." Dr. Cummings testified that the form was incorrectly completed by his office staff.

On February 17, 2003, Dr. Cummings saw Lockhart for a pre-operation visit. Later that day, Lockhart spoke with Guzman in HIG's HR department and requested that another medical certification form be faxed to Dr. Cummings' office to an individual named Adrian. Guzman faxed the blank form to Dr. Cummings' office at 6:46 p.m. Lockhart contends that another "Certification of Health Care Provider" was faxed to HIG on February 17, 2003. McClendon testified that she did not receive a fax from Dr. Cummings office that was sent to HIG on February 17, 2003.

McClendon spoke with Lockhart on February 18, 2003 and explained to Lockhart that she

had been off work without medical authorization for over three weeks. McClendon testified that during this conversation, she requested the FMLA paperwork from Lockhart. Around the noon hour on February 18, 2003, Lockhart arrived at McClendon's office and executed a new Leave of Absence Statement. Lockhart testified that she also attempted to give McClendon some medical documentation concerning her scheduled surgery and condition, but did not attempt to give McClendon the medical certification required under HIG's FMLA policy. Lockhart testified that McClendon refused to accept the documents offered by Lockhart. During this meeting, McClendon told Lockhart that she did not have the medical documentation to explain her absence and that her employment status was being reviewed. After meeting with Lockhart, McClendon obtained approval from the Associate Vice President of Human Resources, Pat Sinclair, to terminate Lockhart. On February 18, 2003, McClendon sent Lockhart a letter terminating her employment because Lockhart had "been off work without authorization or medical documentation" since January 26, 2003. Later on February 18, 2003, McClendon received a fax from Dr. Cummings' office regarding Lockhart's absence from work. This form indicated that Lockhart was not incapacitated and could have worked up until her surgery. Dr. Cummings testified that the initial Certification was incorrectly completed by his staff and that he directed his staff to complete a new form, which reflected that Lockhart was incapacitated and that she could not perform any of her work duties. However, Lockhart has presented no evidence that this revised form was ever sent to HIG before February 20, 2005, well after Lockhart filed this lawsuit.

On February 20, 2003, Dr. Cummings performed a surgical procedure on Lockhart to remove her ovary. On February 28, 2003, Dr. Cummings saw Lockhart for a post-operation visit.

## **Summary Judgment Standard**

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986). The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted). Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Such nonmovant must also articulate the precise manner in which evidence he sets forth supports his claims. *See Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted). Moreover, in designating specific facts, the nonmovant must "'go beyond the pleadings'" and use "'his own affidavits, . . . deposition[s], answers to interrogatories, and admissions on file.'" *Jones v. Sheehan & Young Culp, P.C.*, 82 F.3d 1334,

1338 (5th Cir. 1996) (citation omitted).[1]

If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (citations omitted).

## Evidentiary Objections

Lockhart made multiple objections to HIG's summary judgment evidence. The Court resolves those objections as follows:

1. Exhibit 1. This objection is overruled. The Custodian of Records' Affidavit meets the requirements of Federal Rule of Civil Procedure 56(e), and Lockhart has failed to cite any authority to the Court in support of her objection.

2. Exhibits D, E, F and L. These objections are overruled as they fall under the business records exception to the hearsay rule.

3. Exhibit 7. Lockhart's objections to paragraphs 4, 7 and 14 are overruled. Portions of paragraphs 8, 9, 10 and 11 do contain inadmissible hearsay and are granted to the extent they state what another individual told McClendon.

---

[1] The Court also notes that Local Rule CV-56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence. . . ." Local Rule CV-56(c) further states that the Court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

    4.    Exhibit 8. Paragraph 10 does contain some inadmissible hearsay, and to the extent Kramer is relaying what someone in Dr. Cummings' office told her, Lockhart's objection is granted. Lockhart's objection to paragraph 11 is denied. The statement is not hearsay.

HIG also filed two motions to strike in this case [Doc. Nos. 18 and 38]. These motions are mooted by this Memorandum Opinion and Order granting summary judgment.

## Discussion

*FMLA Claims*

Under the FMLA, employees are entitled to leave (1) for the birth of a child; (2) for the adoption of a child; (3) to care for certain family members who have a serious health condition; or (4) if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. In this case, Lockhart claims that she was entitled to leave under FMLA because she had a serious health condition. The Code of Federal Regulations provides guidance regarding what constitutes a serious health condition. 29 C.F.R. § 825.114 (1999). Specifically, section 825.114 provides:

    (a)    for purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

        (1)    Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity . . . or any subsequent treatment in connection with such inpatient care; or

        (2)    Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

*Id*. The FMLA further provides that "'any employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee.'" *Urban v. Dolgencorp*, 393 F.3d 572, 574 (5th Cir. 2004) (quoting 29 U.S.C. § 2613(a)).

Lockhart has not presented evidence, nor does she argue that she received inpatient care; therefore, in order to prevail on her FMLA claim, she must have had a serious health condition that involved continuing treatment by a health care provider. Lockhart testified that when she called in sick to work on January 26, 2003, she relayed that she had diarrhea and yeast infections. Lockhart obtained an excuse slip from Dr. Cummings on her January 27, 2003 visit, which stated that she should be excused from work for 7-10 days for her IBS. On February 7, 2003 Lockhart returned to Dr. Cummings office for a follow-up and to review the results of an ultrasound. Dr. Cummings specifically testified that he did not treat Lockhart for her irritable bowel syndrome; rather, it was Dr. Cummings' understanding that Dr. Rulof was treating Lockhart for IBS. Lockhart relies on IBS and the excuse from Dr. Cummings for establishing that she had a

"serious health condition;" however, Lockhart's IBS does not meet the Code of Federal Regulations definition for a serious health condition in this case. The regulation requires that in order to establish a serious health condition, Lockhart would have to establish a period of incapacity of more than three consecutive calendar days, and any subsequent treatment or period of incapacity *relating to the same condition* that also involves "treatment two or more times by a health care provider . . . ." 29 C.F.R. § 825.114 . Lockhart has provided no summary judgment evidence that any subsequent treatment or period of incapacity was related to her IBS. Further, Dr. Cummings testified that he never treated Lockhart for IBS. Lockhart failed to offer any other summary judgment evidence from the relevant time period establishing that she saw a health care provider on two occasions for treatment of her IBS. Accordingly, Lockhart has failed to establish she has a serious health condition and was not qualified for FMLA leave based on her IBS.

Dr. Cummings also treated Lockhart for ovarian cysts, and it was for these ovarian cysts that she underwent surgery on February 20, 2003. While, Lockhart's cysts and subsequent surgery could potentially entitle her to FMLA leave, Lockhart did not submit any paperwork or documentation stating that she was seeking FMLA leave on the basis of that condition. HIG contests that it ever received a medical certification from Dr. Cummings' office on February 14, 2003. But even assuming HIG did receive the certification on February 14, 2003, the certification does not entitle Lockhart to FMLA leave. This form states that Lockhart's serious health condition is IBS and yeast infections and further states that she is not incapacitated. Whether or not this documentation correctly reflected Dr. Cummings diagnosis or orders, it is the only documentation HIG arguably received on February 14, 2003 and did receive on February 18, 2003.

Dr. Cummings testified that this medical certification was incorrect and that he directed an accurate form to be filled out later; however, Lockhart has failed to offer any summary judgment evidence that the second version of the medical certification was sent to HIG at any time before Lockhart filed this lawsuit. The Code of Federal Regulations provides that:

> If an employee fails to provide in a timely manner a requested medical certification to substantiate the need for FMLA leave due to a serious health condition, an employer may delay continuation of FMLA leave until an employee submits the certificate. If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.312(b). Lockhart has failed to submit any summary judgment evidence that she submitted a medical certification that substantiated her serious health condition until after she filed the present lawsuit. Accordingly, HIG's decision to terminate her does not violate the FMLA, and HIG's motion for summary judgment should be granted as to Lockhart's FMLA claim. *Collins v. Merck-Medco RX Serv. of Texas*, 2001 U.S. Dist. LEXIS 15143, *10 (N.D. Tex., Sept. 24, 2001).

*Retaliation*

In order to establish a *prima facie* case for retaliation under the FMLA, the plaintiff must demonstrate that: (1) the employee is protected under the FMLA; (2) the employee suffered an adverse employment decision; and (3) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because of plaintiff's request for leave. *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). In this case, Lockhart fails to establish the first element of her *prima facie* case. She was not protected under the FMLA because, as discussed above, she failed to establish she had a serious health condition. Therefore, HIG's termination of Lockhart could not

be in retaliation for her exercising her rights under the FMLA. Further, Lockhart has failed to present any summary judgment evidence to suggest that she was terminated because she requested leave. Accordingly, HIG's motion for summary judgment should be granted as to Lockhart's retaliation claim.

### *Intentional Infliction of Emotional Distress*

HIG also moves for summary judgment on Plaintiff's claim for intentional infliction of emotional distress. The elements for intentional infliction of emotional distress include: "(1) a person acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the person's actions caused another person emotional distress; and (4) the emotional distress suffered by the other person was severe." *Bradford v. Vento*, 48 S.W. 3d 749, 758 (Tex. 2000) (citations omitted). In order to be "extreme and outrageous," the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Whether a defendant's conduct is extreme and outrageous is a question of law. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999). "[I]ntentional infliction of emotional distress is a gap-filler tort never intended to supplant or duplicate existing statutory or common law remedies." *Creditwatch v. Jackson*, 157 S.W.2d 814, 816 (Tex. 2005). When the conduct complained of by the plaintiff is covered by other statutory remedies, the plaintiff cannot assert claims for intentional infliction of emotional distress based on that conduct. *Id.* Additionally, under Texas law, there is no action when the allegations of intentional infliction of emotional distress fall within the realm of an "ordinary employment dispute." *Atkinson v. Denton Pub. Co.*, 84 F. 3d 144, 151 (5th Cir 1996). Employee termination is considered within the realm of an "ordinary

employment dispute." *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F. 2d 31, 33-34 (5th Cir. 1992).

HIG's alleged actions do not reach the extremely high bar set for extreme and outrageous conduct found in a multitude of Texas cases in that the alleged actions are not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as a matter of law.[2]

Lockhart fails to offer any argument in support of her claim for intentional infliction of emotional distress. Accordingly, HIG's motion for summary judgment on Lockhart's claim for intentional infliction of emotional distress should be granted as a matter of law.

***Willful and Intentional Violation of FMLA/Liquidated Damages***

Lockhart has alleged that HIG's discrimination under the FMLA was intentional and willful and that she is entitled to liquidated damages. The Court has determined that HIG did not violate Lockhart's rights under the FMLA as a matter of law; therefore, Lockhart cannot establish a willful or intentional violation of the FMLA. HIG's motion for summary judgment should be

---

[2]*Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000) (holding that although a defendant's conduct constituted racial harassment, a condemnable and possibly illegal action, it did not rise to the level of extreme and outrageous conduct under Texas law); *Atkinson v. Denton Publishing Co.*, 84 F.3d 144, 151 (5th Cir. 1996) (holding that plaintiff's allegations that he was terminated without warning after long-time service, that the company published false and defamatory reasons for his termination to people inside the company, that his superiors were rude and disrespectful to him in his termination meeting and that as a result he experienced grief, shame, humiliation, anger, depression and nausea were in the realm of an employment decision and were not extreme and outrageous conduct as a matter of law); *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1. 13-15 (Tex. App.– Tyler 2000, pet. denied) (holding employer's rudeness, anger and criticism directed at an employee is not extreme and outrageous conduct); *C. M. v. Tomball Regional Hosp.*, 961 S.W.2d 236, 245 (Tex. App.–Houston [1st Dist.] 1997, no writ) (holding that a nurse who interviewed a rape victim, who was a minor, while in the public waiting area of the emergency room in a rude and insensitive manner, did not behave in an extreme and outrageous manner); *Lassiter v. Wilkenfeld*, 930 S.W.2d 803, 807-08 (Tex. App.–Beaumont 1996, writ denied) (holding that a physician's attempts to have a hospital administrator fired for his own personal reasons did not rise to the requisite level of conduct); *Garcia v. Andrews*, 867 S.W.2d 409, 410 (Tex. App.– Corpus Christi 1993, no writ) (holding that employer who asked employee if she did her best work in the dark, discussed a sexually explicit article, and looked at her in a way that made her feel as if he were undressing her did not behave in an extreme and outrageous manner as a matter of law).

granted as it pertains to Lockhart's claim for liquidated damages.

## Conclusion

For the foregoing reasons, Defendant Home Interiors and Gifts' Motion for Summary Judgment should be granted in its entirety and Defendant Home Interiors Gifts' Motions to Strike [Doc Nos. 18 and 38] should be denied as moot.

It is so ORDERED.

**SIGNED this 29th day of March, 2006.**

_____
PAUL BROWN
SENIOR UNITED STATES DISTRICT JUDGE